IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MERRILLEE WELLS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FRED MEYER STORES, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. CV-05-86-E-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant Fred Meyer's motion for summary judgment. Following oral argument, the Court (1) denied summary judgment on the claims for hostile work environment and sexual harassment, and (2) reserved ruling on the claims for retaliation, and intentional and negligent infliction of emotional distress. For the reasons expressed below, the Court will also deny summary judgment on these claims.

## BACKGROUND

From March 1998 until January 2004, plaintiff Merrillee Wells was employed as a pharmacy technician for defendant Fred Meyer in Pocatello, Idaho. In September 2002, Tom Manske became Wells' immediate supervisor.

**Memorandum Decision and Order - Page 1**

Wells alleges that shortly after Manske became her supervisor, he began to sexually harass and verbally abuse her. Manske made comments about Wells' breast size, placed pictures of naked men in the shared bathroom, talked of his visits to pornographic websites, called another female employee a "bitch" in the presence of Wells, and asked female pharmacy technicians to sit on his lap. Wells also accuses Manske of making sexually provocative comments in her presence about a toothless customer, as well as telling Wells she could suck on his inhaler.

In either April or May of 2003, after a confrontational performance evaluation between Wells and Manske, Wells complained about these matters to Store Director Bub Fowers. While this was Wells' first official complaint, she alleges that she had repeatedly complained informally to both Manske and other individuals working in Fred Meyer management and human resources about the problems in the pharmacy.

At the same time, Danna Ramos, one of Wells' co-workers, was also complaining to Fowers about harassment by Manske. Ramos alleges that she complained to Fowers three times about the harassment but that nothing was done to investigate or remedy any of her complaints. Finally, towards the end of May 2003, Ramos contacted Berk Fraser, the Regional Pharmacy Manager in Boise, to tell him that nothing had been done .

**Memorandum Decision and Order - Page 2**

Not long after Ramos contacted Fraser, Cindy Baker, Fred Meyer's Regional Human Resource Supervisor, arrived at the Pocatello store to conduct an investigation into the complaints. On May 29, 2003, after conducting a day of interviews among pharmacy personnel, Baker telephoned Wells and Ramos at the pharmacy to tell them that the harassment wouldn't happen again.

In late September 2003, Ryan Rushton replaced Fowers as Fred Meyer's Pocatello Store Director. Rushton testified during his deposition that Food Manager Dale Terry informed him about problems in the pharmacy, but that Terry never indicated that sexual harassment was one of them.

Wells made no further official sexual harassment complaints against Manske until January 2, 2004, when she informed Terry that she was still having problems with Manske. Wells' January complaint was precipitated by a series of confrontations with Manske in December. Sometime in December, Wells caught a cold for which she needed a prescription inhaler. Wells claims that when Manske heard that she was needing an inhaler prescription, he commented, "I have an inhaler, do you want to come and suck on mine." Wells considered the comment to have sexual connotations and told Manske she thought he was a pig. Manske denies making this statement, although Ramos claims she also heard Manske make the comment to Wells.

**Memorandum Decision and Order - Page 3**

On December 31, Manske allegedly accused Wells of turning him in to the Idaho Pharmacy Board for illegal staffing problems. A few days later, Wells claims that based on Manske's belief that Wells was improperly counseling a customer, Manske got extremely angry with her, got in her face, pointed his finger at her nose and told her she "had been warned." At that point, Wells left the pharmacy and went to Terry to complain about Manske's conduct.

Within a day or two of hearing Wells' complaint, Terry informed Rushton about the sexual harassment allegations. That same day, Rushton called Baker in Boise to discuss conducting another investigation. Not feeling that the situation was urgent, Baker said she would come over to the Pocatello store on January 13 to conduct an investigation.

However, before that investigation occurred, Manske discovered during a routine inventory conducted on the morning of January 9, 2004 that three prescriptions in Wells' name were on the pharmacy shelves, with pills missing, that he believed were unpaid for. Fred Meyer had a policy prohibiting "grazing," which was defined as consuming store products without paying for them.

Manske reported the situation to Terry, and then went home since he was scheduled to have the rest of the day off. Terry then informed Rushton about the discovery. Rushton went to the pharmacy, verified the discrepancy, and then

**Memorandum Decision and Order - Page 4**

phoned Berk Fraser and Regional Loss Prevention Manager, Marlin Baker, to discuss how to handle the problem. Neither person gave Rushton specific details on how to proceed, but both recommended that he investigate further.

That same day, Rushton interviewed Wells who acknowledged that the prescriptions were hers and that two of them had not been paid for yet. Wells indicated to Rushton that she didn't think she had done anything wrong by consuming the pills because she always told a pharmacist about it first. After a second interview that afternoon, Rushton decided to place Wells on suspension for three days.

After sending Wells home, Rushton once again contacted Berk Fraser and Marlin Baker, both of whom recommended that Rushton terminate Wells. Once Rushton made the decision to fire Wells, he contacted Cindy Baker who also agreed with that recommendation. On Monday, January 12, 2004, Rushton told Wells that she was fired for violating Fred Meyer's policy on taking pills. The next day, Cindy Baker conducted an investigation into Wells harassment allegations, but was unable to substantiate any of Wells' claims.

## STANDARD OF REVIEW

To prevail on its summary judgment motion, Fred Meyer must show that there are no genuine issues of material fact, a showing that can be made simply by

**Memorandum Decision and Order - Page 5**

demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

That showing would require Wells to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). She can not "rest on mere allegations of denials of his pleadings." *Id*.

In determining whether a material fact exists, facts and inferences must be viewed most favorably to Wells. *T.W. Elec. Serv. , Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). To deny the motion, the Court need only conclude that a reasonable jury could reach a result other than that proposed by the moving party. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th. Cir. 1981).

## ANALYSIS

**1.      Retaliation Claim**

Fred Meyer contends that Wells has failed to establish a claim of retaliation against Fred Meyer. Title VII prohibits retaliation against an employee for opposing unlawful discrimination. 42 U.S.C.S. § 2000e-3(a). To make out a *prima facie* case of retaliation, the employee must show that (1) she engaged in a protected activity, such as the filing of a complaint alleging sexual harassment; (2) the employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Hardage v. CBS*

**Memorandum Decision and Order - Page 6**

*Broad., Inc.,* 436 F.3d 1050 (9th Cir. 2006). Factors in establishing the causal link include proximity in time between the protected activity and the adverse action, and the strength of the employer's stated reason for the adverse action. *Keyser v. Sacramento Unified School Dist.*, 265 F.3d 741, 751-52 (9th Cir.2001). The requisite degree of proof to establish a prima facie case is minimal. *Messick v. Horizon Industries, Inc.*, 62 F.3d 1227, 1229 (9th Cir.1995).

Wells has made out a *prima facie* case for retaliation. She engaged in protected activity by making a sexual harassment complaint on January 2, 2004. Only 7 days separate Well's complaint of harassment (on January 2, 2004) and Manske's report of her policy violation (on January 9, 2004). Manske's report is an adverse employment action even if unrelated to the firing because it could dissuade a reasonable worker from making or pursuing Title VII complaints. *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006). There are genuine issues of material fact concerning whether Manske, in making that report, was simply following company policy or whether he was retaliating against Wells, an employee he had previously – granting all inferences to Wells – harassed and intimidated. This evidence raises the minimal inference of causation necessary to establish a *prima facie* case.

Fred Meyer responds that Wells was fired for violating the grazing policy, a

**Memorandum Decision and Order - Page 7**

legitimate reason that swings the burden back to Wells to show pretext. She needs to present only "very little evidence" of pretext to survive summary judgment. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072 (9th Cir. 2003). Because motivations are often difficult to ascertain, "such an inquiry should be left to the trier of fact" since impermissible motives are often easily masked "behind a complex web of post hoc rationalizations." *Id.* at 1073.

The Court finds questions of fact whether Fred Meyer's stated reason for the firing – that Wells violated the grazing policy – is pretextual. First, there is a temporal proximity – just 10 days passed between Wells' last complaint of harassment and her firing.

In addition, there are questions surrounding the "grazing" policy. Michael Sanders, Wells' first supervisor as Pharmacy Manager before Manske took his place, testified that he understood that the grazing policy did not apply to the pharmacy. *See Sanders Deposition* at p. 37. Sanders also testified that he allowed employees to take pills without immediately paying for them so long as they advised him of what they were doing. *Id*. at 38-39. Sanders allowed Wells to do this, as he understood she was financially strapped. *Id*. at p. 20. While Sanders stated, in response to a question from Fred Meyer's counsel, that he felt that seven months was too long to allow such unpaid consumption to continue, *id*. at p. 20,

**Memorandum Decision and Order - Page 8**

the pharmacy practices in this regard were never committed to writing. *Id*. at p. 9. Moreover, Wells alleges that she paid for the one 7-month old prescription in this case. *See Wells Deposition* at p. 147. Although she has no receipt, the Court cannot weigh her credibility in this summary judgment proceeding and must therefore take her statement as true.

This evidence raises questions of fact concerning whether the practice in the pharmacy deviated from the letter of the grazing policy. Moving suddenly from a loose practice to a strict rule to justify the firing of an individual at least raises the minimal inference of pretext needed to overcome a summary judgment.

Fred Meyer responds that Manske had no input into the ultimate employment decision to terminate Wells. Because there is no connection between Manske's retaliatory act and Wells' firing, Manske's conduct cannot form the basis for a retaliation claim.

However, the Supreme Court rejected a similar argument, holding that Title VII's "anti-retaliation provision . . . provide[s] broad protection from retaliation . . . [and] extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington*, 126 S.Ct. at 2413. Thus, Wells need not connect the retaliatory conduct with her termination to maintain her retaliation claim under Title VII. She need only show that Manske's conduct "might have dissuaded a

**Memorandum Decision and Order - Page 9**

reasonable worker from making or supporting a charge [under Title VII]." *Id.* at 2415 (internal citations omitted). Questions of fact on that issue preclude summary judgment here.

## 2.  **Intentional and Negligent Infliction of Emotional Distress Claims**

Fred Meyer argues that summary judgment should be granted on Wells' emotional distress claims because the conduct to which she may have been subjected could not reasonably be regarded as so extreme and outrageous as to permit recovery. Also, Fred Meyer claims that any emotional distress Wells may have suffered was not sufficiently severe. Finally, Fred Meyer contends that Wells has not shown evidence of physical manifestations of injury caused by and required for claims of negligently inflicted emotional distress.

In order to state a claim for intentional infliction of emotional distress, Wells must show that: (1) Manske's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there was a causal connection between the wrongful conduct and her emotional distress; and (4) the emotional distress was severe. *Payne v. Wallace*, 32 P.3d 695 (Id.Ct.App. 2001). In Idaho, the plaintiff need not show the emotional distress resulted in a physical injury or manifestation for intentional infliction of emotional distress. *Curtis v. Firth,* 850 P.2d 749 (Id.Sup.Ct. 1993). However, a cause of action for negligent infliction of emotional

**Memorandum Decision and Order - Page 10**

distress will only arise where the plaintiff suffers a physical manifestation of an injury. *Czaplicki v. Gooding Joint School District No. 231*, 775 P.2d 640 (Id.Sup.Ct. 1989).

Manske's conduct could be found by a reasonable jury to be extreme and outrageous granting all inferences to Wells and her descriptions of that conduct as detailed above. In addition, Wells has testified to having suffered a change in her menstruation cycle, diarrhea, loss of sleep, vomiting, nightmares and a stomach ache as a result of Manske's conduct. Accordingly, summary judgment will be denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED that consistent with the foregoing, that Fred Meyer's motion for summary judgment (Docket No. 27) is

DENIED for all claims.



DATED:  **August 25, 2006**

_B. Lynn Winmill_
B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision and Order - Page 12**